# SUPREME COURT OF ERRORS.

## COUNTIES OF NEW HAVEN AND MIDDLESEX.

### APRIL TERM, 1873.

### Present,

### PARK, CARPENTER, FOSTER AND SEYMOUR, Js.

---

## HEMAN S. HURD *vs.* THE HARTFORD AND NEW YORK STEAMBOAT COMPANY.

The defendants were owners of a line of steamboats running between New York and Hartford for the conveyance of freight and passengers and touching at *M* and other places on the Connecticut River. Goods were shipped at New York by their line, consigned to the plaintiff at *M*, where the boat arrived at 3 o'clock in the morning. The plaintiff was not there to receive the goods, and an agent of the defendants who owned the wharf and a storehouse upon it, as such agent took charge of the goods and stored them, and on the plaintiff's calling for them at 9 o'clock the same morning, demanded a fee of ten per cent. on the amount of the freight, which the plaintiff refused to pay. In replevin brought for the goods it was found that it was the custom of the river for agents of the defendants to take charge of goods landed by them when the consignees were not present to receive them and to charge at that rate for their services, and that the custom was known to the plaintiff; also that the commissions received by this agent were retained by him for his services, and that the charge in the present case was a reasonable one for the service rendered. Held—1. That the duty of the defendants being two fold, to transport and land the goods, and to keep them safely for a reasonable time after landed for delivery to the consignee, they had a right in the absence of an agreement to perform the entire service for a stipulated sum, to make a general charge for the whole service, or to charge separately for the two parts of the service. 2. That it did not affect the case that the agent was allowed to retain the entire amount charged for the storage for his own compensation. 3. That the custom being well established, and having been known to the plaintiff, it became part of the implied contract under which the goods were shipped.

REPLEVIN for goods claimed to be unlawfully detained; brought to the Superior Court in Middlesex county, and tried to the court on the general issue. The court found the following facts:

The plaintiff, a trader at Middle Haddam, on the first day of October, 1871, purchased in New York a quantity of goods which were the next day shipped by the seller on board one of the defendants' line of steamers running between New York and Hartford. These steamers made regular daily trips, touching regularly at several landings on Connecticut River, and among them the landing at Middle Haddam, where the plaintiff resides and where the goods were consigned. The boat by which the goods in question were shipped left New York at four o'clock in the afternoon of October 2d, and arrived at Middle Haddam about three o'clock the following morning, which was about the usual time unless detained by fog or the state of the tide on the bar at the mouth of the river. The goods were landed on the dock in the usual manner and were immediatly placed for safe keeping in the store house on the dock, and the door of the store house locked. The plaintiff at about nine o'clock the same morning, and within a reasonable time after the goods were landed and placed in the store house, offered to take them away, and then tendered the amount of the defendants' bill for freight to Horace Johnson, the owner of the wharf and store house, and the person who received and took charge of all the merchandise there landed from the defendants' boats. The plaintiff was allowed to take a part of the goods, and the remainder were withheld by Johnson because the plaintiff refused to pay a charge of thirty-eight cents which was added by Johnson to the defendants' freight bill. This addition was ten per cent. of the amount of the bill for freight, and was charged by Johnson for his own benefit and as a reasonable compensation for the care of the goods. The value of the goods so withheld was $400.

On the trial the defendants claimed that if any one was liable to the plaintiff, it was Johnson, and not themselves. They had no pecuniary or other interest in the charge made

by Johnson. They had a contract with him by virtue of the provisions of which they had a right to land goods and passengers on his wharf, and as a consideration for which they paid him $400 per year, and furnished the oil for the necessary dock lanterns and other lights, and Johnson on his part employed a man to set the dock lights, tend the boat lines, receive and ship goods, and take care of goods landed. The defendants' freight bills were made out on their boats by their freight clerks, signed by the clerks, and sent ashore with the goods that were landed, and placed for collection in the hands of the owners of the wharves, and they were charged with, and held responsible for, the amount of the bills. The defendants own no wharves and storehouses at any landings on Connecticut River except at Hartford and Middletown, and except at these it has for several years been the regular and uniform custom of the proprietors of the several wharves and storehouses on the river, including those at Middle Haddam, to make for their own use and compensation such an additional charge as was made in the present case to the amount of the defendants' bill for freight, which was not an unreasonable charge for the care and safe-keeping of the plaintiff's goods.

This custom was well known to and acquiesced in by the business men, and those accustomed to receive goods by the boats along the line of the defendants' route, and was well understood by the plaintiff himself, and he had often and with a few exceptions always paid it, but sometimes unwillingly when his goods remained on the dock and in Johnson's care but a short time. On two occasions suits to recover storage or wharfage were brought against him, in the name of the defendants, but not with their direction or knowledge, but were not proceeded with; and in October, 1870, the plaintiff brought an action of replevin against Johnson to recover sundry goods detained by him for non-payment of his charge, which suit was withdrawn by arrangement of the parties, each paying his own costs. Johnson never relinquished or intended to relinquish his claim to the

right to make a similar charge on account of all goods landed on his dock from the defendants' boats.

A similar arrangement to that with Johnson, existed between the defendants and the proprietors of the other wharves and storehouses on Connecticut River, (except at Hartford and Middletown,) at which their boats made regular landings, and they landed and received passengers and merchandise at all these stations on similar terms.

Johnson was the defendants' agent at Middle Haddam to collect their freight bills, and for other purposes consistent with the prosecution of their business at that landing and not inconsistent with the foregoing facts. The plaintiff's damage was assessed at $25.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*Bacon*, with whom was *Elmer*, for the plaintiff.

1. A common carrier is bound to keep goods which he has carried to their destination, a reasonable time after their arrival for delivery to the consignee. *Graves* v. *Hartford & N. York Steamboat Co.*, 38 Conn., 143 ; *Winslow* v. *Vermont & Mass. R. R. Co.*, 42 Verm., 700 ; 2 Redfield on Railways, 68. Johnson is found to be the agent of the defendants at Middle Haddam for all purposes connected with the shipping and delivery of freight, and it can make no difference whether the defendants owned the storehouse or hired it; in either case the agent could have no personal claim upon these goods, at any rate until after a reasonable time had elapsed, within which the plaintiff could take them on payment of freight.

2. The petty extortion on the part of the defendants' agent which this case discloses, cannot be sustained on the ground of custom or usage. *Firstly.* The custom claimed is unreasonable and illegal. Such a custom cannot vary the legal rights of the consignee. 2 Parsons on Cont., 5th ed., 545 ; *Thompson* v. *Riggs*, 5 Wall, 663 ; *Metcalf* v. *Weld*, 14 Gray, 210 ; *Carkin* v. *Savory*, id., 528 ; *Codman* v. *Evans*, 5 Allen, 308 ; *Sturges* v. *Buckley*, 32 Conn., 18. In the lan-

guage of Ld. Lyndhurst, " usage may be admissible to explain what is doubtful, but is never admissible to contradict what is plain." 1 Smith Lead. Cas., 677 ; *Bolton* v. *Colden*, 1 Watts, 360 ; *Schooner Reeside*, 2 Sumn., 569. *Secondly*. A custom to be valid must be certain and uniform. 1 Bla. Com., 77 ; *Sturges* v. *Buckley*, supra. Here is one custom for Middle Haddam and the places where the defendants do not own storehouses, but only hire them, and another custom for Middletown and Hartford where the defendants own storehouses, all on the same route. *Thirdly*. A custom to be legal must have been peaceable and acquiesced in, not subject to contention and dispute. 1 Bla. Com., 77. The finding shows that this claim of the defendants' agent has generally been disputed by the plaintiff.

3. But if by custom the defendants' agents are authorized to make these charges for their own benefit, upon goods while in the possession of their principals as common carriers, such agent can have no lien upon such goods not in his individual possession. Yet while these goods in question were confessedly in the possession of the defendants, their agent refused to deliver them, claiming an individual lien.

*Attwood*, for the defendants.

1. The defendants having delivered the goods replevied by the plaintiff, in good order on the dock at Middle Haddam, in accordance with the universal usage and custom of all steamboat companies on the Connecticut River, which custom was well known to the plaintiff, had no possession or control of the goods, and could not properly be made defendants in this case. 1 Swift Dig., 392 ; Chitty on Cont., 483*a; Barber* v. *Brace*, 3 Conn., 13 ; *Kilgore* v. *Bulkley*, 14 id., 391 ; *Leach* v. *Beardslee*, 22 id., 408 ; *Converse* v. *Norwich & N. York Transportation Co.*, 33 id., 181.

2. If any liability existed, (which we deny,) it was not a liability of the defendants ; the goods being at the time of the commencement of the suit in the possession and under the control of Johnson, who held them under a lien for personal services and care as a wharfinger and warehouse man,

in accordance with the established custom and usage at that landing. 1 Swift Dig., 537 ; *Union Wharf Co.* v. *Hemingway*, 12 Conn., 300 ; 1 Bouvier's Inst., 406, 407.

SEYMOUR, J. The facts out of which the present controversy arises are in substance as follows :

The defendants are the owners of a line of steam boats engaged in the transportation of passengers and goods between New York and Hartford, touching for delivery of passengers and freight at Middle Haddam and various other landings on Connecticut River. The goods replevied were shipped at New York, consigned to the plaintiff at Middle Haddam, where they arrived at three o'clock in the morning. The plaintiff was not at the boat to receive his goods. One Johnson owns the wharf and a storehouse there and was also for certain purposes an agent of the defendants. He, as his custom was, took charge of the goods, placed them in his storehouse for safe-keeping, and held them in readiness to deliver to the plaintiff upon payment of freight and a small charge for storage. At nine o'clock the same morning the plaintiff called for his property, and offered to pay the freight, less Johnson's charge. This the plaintiff refused to pay, and thereupon Johnson retained possession of the goods, claiming a lien on them to secure payment of the charge for storage.

The Superior Court finds that Johnson's charge was reasonable for the services which he rendered, and also finds that the custom of making it prevailed at Middle Haddam and at all other landings on the river at which the defendants' boats merely touched. The regular charge was ten per cent. added to the freight bill ; that is, the defendants made out a freight bill charging a certain sum ; and then ten per cent. was added to the bill by Johnson for storage and care of the goods after landing. The Superior Court also finds that the custom of making this charge was known to the plaintiff, he having been in the habit of receiving goods by the defendants' boats.

It is not distinctly found whether the goods after landing were in the possession of Johnson in his character of agent

of the defendants, or in his character of wharfinger.  The
plaintiff insists that the defendants were bound as common
carriers to have an agent at the wharf to keep freight a rea-
sonable time and to deliver it to consignees, and that they
were not at liberty to deliver goods to a wharfinger immedi-
ately on the arrival of the boat, and that Johnson must there-
fore be regarded as an agent of the defendants for all pur-
poses of the custody and care of the goods until the plaintiff
demanded them at nine o'clock of the morning.  This ques-
tion of the defendants' duty in the premises is not regularly
before us and we are not called on to decide it.  We are con-
tent to adopt the plaintiff's construction of the record, and
to treat Johnson as in fact an agent of the defendants, hav-
ing the care and possession of the goods as such, and retain-
ing possession under the defendants' authority to enforce the
lien in controversy.

This being so, it is obvious that the duty of the defendants
as common carriers is divisible into two parts : first the trans-
portation of the goods and landing them at the wharf; and
second, their safe keeping and storage a reasonable time after
the landing and their ultimate delivery to the consignee on
proper demand.  This second part of their duty is an impor-
tant one, attended with some labor and expense, and requiring
care and caution.  There can be no doubt of the right of the
defendants to charge for the performance of this part of their
duty, as well as for performing the transportation to the
wharf ; and they may either charge a gross sum for the en-
tire service, or they may divide their charges according to the
foregoing division of their duties.  Upon a fair construction
of the facts found by the Superior Court the defendants seem
in this case to have done nothing more than thus divide their
charges—to wit, a certain sum for transportation to the wharf
called freight, and then a certain further sum, adding one
tenth to the freight proper, for safe keeping, storage and
delivery to consignee in cases where the consignee is not at
the wharf to receive his goods on the arrival of the boat.

The plaintiff however insists that this charge of a tenth is
made by Johnson as an individual, and is for his benefit, and

is wholly kept by him, and is a petty outside exaction. It is true that Johnson is permitted to take the ten per cent. for his own benefit, but it is to be borne in mind that Johnson owns the wharf at which the boat lands, and owns the storehouse where the plaintiff's goods were deposited, and the entire duty of the defendants as common carriers after the landing is performed by him. It seems therefore natural and right that he should be permitted to take and keep the ten per cent. as a compensation for the performance by him of these duties. These duties pertain to the defendants, and are performed by Johnson as their agent. The compensation must therefore by fair construction come to him as agent in the first instance, though ultimately his own by his arrangement with the defendants.

It is to be noticed that these goods were not shipped under any special contract. In the absence of a special contract they were taken and carried under the contract which the law implies, arising from the known customs of the business, to wit, to pay the customary price. If the goods had been shipped under a contract to deliver them to the consignee at Middle Haddam for a given price, that price might well be held to be a full compensation for the entire duty of the defendants as carriers of the goods, including the care and storage of them and their delivery to the consignee upon demand within a reasonable time after the arrival of the boat. But here there being no special contract touching freight, and there being an established custom to make the charge in dispute in the divided form above mentioned, and the plaintiff being fully acquainted with it, that custom becomes part of the implied contract under which the goods were shipped.

The Superior Court is advised to render judgment for the defendants.

In this opinion the other judges concurred.